[Civ. No. 8881.   Third Dist.   Feb. 28, 1957.]

Estate of ANNA C. MORGAN, Deceased.   EVA MORGAN
DEADY, Respondent, v. LEO MORGAN, Appellant.

Jones, Lane, Weaver & Daley, Daniel S. Lane, and Charles
H. Vance, for Appellant.

John A. Wilson for Respondent.

PEEK, J.—This is an appeal from a judgment denying
probate of a will. It is the contention of the proponent-ap-
pellant that the findings of undue influence and lack of testa-
mentary capacity are not sustained by the evidence.

The record shows that the testatrix and her husband, Wil-
liam, were residents of La Jolla until his death in 1954.   The
proponent, Leo, was the son of the testatrix by a prior mar-

riage and the contestant, Eva, was the daughter of Anna and William. Both children resided at the family home until adulthood, Leo until 1917. In 1933 he moved to Stockton where he has resided ever since. Eva who was married in 1932 left her parents' home at that time and since 1948 has been a resident of San Pablo. In April of 1948, Anna executed a will leaving all of her property to her husband for life with the remainder in equal shares to Leo and Eva. This will was copied by Mrs. Keele, a friend of long standing, from a former will, the only change being that William was named as executor in place of a bank. Anna suffered a stroke in 1951 from which she never completely recovered. In April of that year she executed a third will. Mrs. Keele testified that at Anna's request she copied the provisions of the 1948 will, changing it only to the extent that Eva was named as executrix in place of William. During William's last illness Anna, together with her children, consulted an attorney in San Diego concerning the possibility of a guardianship for William because of their property interests. They were advised that such a proceeding would be unnecessary since the property of Anna and William was all held in joint tenancy. William's will left all of his property to Anna for life with the remainder to Eva. Leo was not mentioned. Because Anna's will had only one subscribing witness, the San Diego attorney asked her if she would desire to execute a new and like will, to which she answered that she would. In accordance with her instructions, an identical will was drafted by the attorney. Following William's death, Anna decided she would stay with her children in the north and first went to the home of Leo in Stockton. The signature card on her commercial bank account was changed to require the signatures of Leo and Eva as well as her own. She continued to reside with Leo until her death. The day following her arrival in Stockton, Leo took her to an attorney who had represented him several years previously and whom he had known for some time. The attorney testified that their discussion concerned the probate of William's will and the preparation of another will for Anna. Under the terms of this will Eva was disinherited for the reason that "she is Willed all of the community interest" of William. The will also named Leo as executor. Thereafter the attorney discovered that there was no property of William to pass by will since all was in joint tenancy with Anna, and he so informed her. This identical information had been conveyed to all of them by the attorney

in San Diego. Thereafter Anna again went to his office where another will was executed and this will is the subject of the contest here. In the contested will Leo was named as her sole beneficiary, and again Eva was disinherited for the stated reason that she was ''capable of taking care of herself.'' Some time during the same month that the last will was executed, Eva received a letter from Leo stating that their mother desired to have Eva's name removed from the bank signature card. When Eva arrived in Stockton, she was asked by her mother to remove the name and at the same time was offered money to do so. Eva refused the money but did agree to remove her name. Thereafter Leo took complete care of his mother's business affairs including the writing of all checks for her. During the time his mother remained with him, Leo refused to take her to San Pablo to visit Eva except on one occasion, although several times he took her to visit his sister-in-law who lived in the same locality. His daughter testified that in the early part of April he told his mother that he did not think she should visit Eva because she, Anna, would be put in a mental institution. Also during the month of April, unknown to Eva, Leo withdrew $4,400 from his mother's account which was later evidenced by an unsecured promissory note. In addition he charged her $75 a month for her support. Following a second stroke suffered by Anna, Leo filed a verified petition seeking to have himself appointed her guardian upon the ground that she was mentally incompetent. Eva knew nothing of such proceedings until she received formal notice of the same, whereupon she went to Stockton. Although she was advised by Leo's attorney that it would be difficult, she was appointed, at the suggestion of the court, as coguardian with Leo. A few days thereafter Anna was taken to a hospital and on July 23 she died at the age of 82. Subsequent to the guardianship proceedings, Leo first told Eva that he knew nothing of the last will executed by Anna. Later he said that he had taken Anna to an attorney's office and that she had made a will but that he did not know its contents. Still later he told Eva she had nothing to worry about; that the provisions of the will had not been changed. The record also discloses testimony by Mrs. Keele that she had often discussed property matters with Anna, and that the testatrix had stated to her many times that her property would be equally divided between Leo and Eva. Anna's sister, Mrs. Moore, also testified that she had made similar statements to her; that as late as May, 1954, subsequent to the execution

of the last will, Anna had told her of the new will and that it provided that half of her property was to go to Eva and half to Leo.

■ It is the rule that where there is substantial evidence that the proponent sustained a confidential relation with the testatrix, unduly profited by the will and actively participated in securing its execution, a presumption of undue influence arises and a burden is cast upon the proponent to show that the testamentary document was not induced by coercion or fraud. (*Estate of Pellegrini*, 138 Cal.App.2d 143 [291 P.2d 558].)

■ The evidence, viewed in light of the enunciated rule, amply supports the finding of the trial court that a confidential relationship existed between Leo and his mother. From April 1, until shortly before her death in July, decedent lived continually with Leo; he borrowed a large sum of money from her and charged a substantial amount for her expenses; he took care of all of her business affairs; her contact with the attorney who prepared the contested will was made by Leo; he exerted himself to keep Anna from seeing Eva; he told his mother she should not visit Eva because she would be put into a mental hospital; he took his mother to San Pablo to see his sister-in-law but except for one occasion he refused to take her to see Eva; he did not notify Eva concerning the guardianship proceedings; Anna at that time was approximately 82 years old, had suffered a stroke in 1951 from which she never completely recovered and was in a generally weakened physical and mental condition; she talked very little to anyone; under the terms of the contested will she gave Leo all of the property which had been acquired by her and William, Eva's father and Leo's stepfather, the value of which was approximately $45,000; and her disinheritance of Eva with whom she had always been on friendly terms was at variance with the intention she expressed both before she went to live with Leo and after the execution of the contested will.

The record contains no substantial evidence to rebut the presumption as found by the trial court. It necessarily follows that its conclusion upon the question of undue influence must be affirmed. Hence it becomes unnecessary to discuss appellant's remaining contention relative to the issue of mental incompetency.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.